**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*

        *-and-*

**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
*mreese@reesellp.com*

United States District Court
Southern District of New York                          7:19-cv-08442

| | |
|---|---|
| Shari Trust, Jane Doe, individually and on behalf of all others similarly situated | |
| Plaintiffs | Class Action Complaint |
| - against - | |
| Silk Operating Company, LLC | |
| Defendant | |

        Plaintiffs by attorneys alleges upon information and belief, except for allegations pertaining to plaintiffs, which are based on personal knowledge:

        1.    Silk Operating Company, LLC ("defendant") manufactures, distributes, markets, labels and sells almondmilk beverages purporting to be characterized by vanilla under the Silk brand ("Products").

        2.    The Products are available to consumers nationwide from third-party retailers, including brick and mortar and online stores and directly from defendant's website.

3.     The Products include eight (8), twelve (12), thirty-two (32), sixty-four (64) and ninety-six (96) ounce cartons and bottles in the Product Lines below.

<u>Regular</u>                    <u>Light (Fewer Calories)</u>                    <u>Light (Less Sugar)</u>





4.     The Products' labeling or advertising makes direct representations with respect to their primary recognizable and characterizing flavor, by word, vignette, e.g., depiction of a fruit, or other means, through the word "VANILLA" on the top of the principal display panel, parallel with the base of the product.[1]

I.   Vanilla is Constantly Subject to Efforts at Imitation Due to High Demand

5.     In 1908, E. M. Chace, Assistant Chief of the Foods Division of the U.S. Department

---

[1] 21 C.F.R. § 101.22(i).

of Agriculture's Bureau of Chemistry, noted "There is at least three times as much vanilla consumed [in the United States] as all other flavors together."[2]

6.      By law, vanilla refers to "the total sapid and odorous principles extractable from one-unit weight of vanilla beans."[3]

7.      The global landscape since The Pure Food and Drugs Act, enacted in 1906 to "protect consumer health and prevent commercial fraud," has changed little.[4]

8.      Daily headlines alert us to this resurgent international threat of "food fraud" – from olive oil made from cottonseeds to the horsemeat scandal in the European Union.[5]

9.      While "food fraud" has no agreed-upon definition, its typologies encompass an ever-expanding, often overlapping range of techniques with one common goal: giving consumers less than what they bargained for.

10.      Vanilla is considered a "high-risk [for food fraud] product because of the multiple market impact factors such as natural disasters in the source regions, unstable production, wide variability of quality and value of vanilla flavorings," second only to saffron in price.[6]

11.      Its value as the second most expensive flavoring ingredient after saffron has made it a constant target of those seeking to dilute, imitate, adulterate and "extend" the flavor of this

---

[2] E. M. Chace, "The Manufacture of Flavoring Extracts," Yearbook of the United States Department of Agriculture 1908 (Washington, DC: Government Printing Office, 1909) pp.333–42, 333 quoted in Nadia Berenstein, "Making a global sensation: Vanilla flavor, synthetic chemistry, and the meanings of purity," History of Science 54.4 (2016): 399-424 at 399.
[3] 21 C.F.R. §169.3(c)
[4] Berenstein, 412.
[5] Jenny Eagle, 'Today's complex, fragmented, global food supply chains have led to an increase in food fraud', FoodNavigator.com, Feb. 20, 2019; M. Dourado et al., Do we really know what's in our plate?. Annals of Medicine, 51(sup1), 179-179 (May 2019); Aline Wisniewski et al., "How to tackle food fraud in official food control authorities in Germany." Journal of Consumer Protection and Food Safety: 1-10. June 11, 2019.
[6] Société Générale de Surveillance SA, ("SGS "), Authenticity Testing of Vanilla Flavors – Alignment Between Source Material, Claims and Regulation, May 2019.

tropical orchid.[7]

12.     These general typologies of food fraud are applied to how it is carried out in vanilla.[8]

| Type | Example |
| --- | --- |
| ➤ Cheating on analytical tests by containing markers specifically tested for | • Manipulation of the carbon isotope ratios to produce synthetic vanillin with similar carbon isotope composition to natural vanilla |
| ➤ Cheating by giving consumers the impression the food or ingredient is present in greater amounts and/or higher quality form than it actually contains | • Ground vanilla beans and/or seeds to provide visual appeal as "specks" so consumer thinks they are a result of the product containing real vanilla bean, when the ground beans have been exhausted of flavor, and any vanilla flavor tasted may not even be due to the presence of real vanilla |
| ➤ Substitution or Replacement a food product/ingredient with an alternate food product/ingredient of lower quality | • Tonka beans, which are banned from entry to the United States, instead of vanilla beans; <br> • Coumarin, phytochemical found in Tonka beans, to increase the vanilla flavor perception. |
| ➤ Coloring agents to produce a more attractive color | • Caramel in vanilla extracts to darken the substance's color additives like caramel to enhance the hue of an imitation vanilla so it more closely resembles real vanilla;[9] <br> • Annatto and turmeric in dairy products purporting to be flavored with vanilla, to darken the color to better resemble the hue of rich, yellow butter. |

---

[7] "Extend" in the context of flavoring is a modern way to say "dilute" or "adulterate" – to make what is being "extended" go farther.  Since "dilute" and "adulterate" have a deserved negative connotation, the flavor industry and technical trade literature use the euphemistic term, "extend," or sometimes "fortify."
[8] Kathleen Wybourn, DNV GL, Understanding Food Fraud and Mitigation Strategies, PowerPoint Presentation, Mar. 16, 2016.
[9] Renée Johnson, "Food fraud and economically motivated adulteration of food and food ingredients." Congressional Research Service R43358, January 10, 2014.

➢ Addition of less expensive substitute ingredient to mimic flavor of more valuable component

• Synthetically produced ethyl vanillin, derived from wood pulp, tree bark or coal tar.

➢ Ingredient list deception[10]

• Subtle, yet deliberate misidentification and obfuscation of a product's components and qualities as they appear on the ingredient list – "ground vanilla beans" as containing actual vanilla flavor when they are devoid of any naturally occurring vanilla flavor.

➢ Diluting/Extending

• Combination with a variety of flavoring substances such as propenyl guaethol ("Vanitrope"), a "flavoring agent [, also] unconnected to vanilla beans or vanillin, but unmistakably producing the sensation of vanilla."[11]

• "Spiking" or "fortification" of vanilla through addition of natural flavors which simulate the taste of vanilla, contrary to consumer expectations and law.

13.    The "food fraud" typologies evident in the Products include one or more of the above-described types.

II.  "Vanilla Almondmilk" is Misleading because the Flavor is Not Only Derived from Vanilla and/or the Amount of Vanilla is Insufficient to Independently Characterize the Products

14.    The "vanilla almondmilk" Products are expected to contain the characterizing food

---

[10] Recent example of this would be "evaporated cane juice" as a more healthful sounding term to consumers to identify sugar
[11] Berenstein, 423.

ingredient, vanilla.

15.    The front labels represent that the vanilla (i) flavor is exclusively derived from the vanilla plant and (ii) present in an amount sufficient to independently characterize the Products.

16.    These representations are misleading because the ingredient lists reveal the Products contains "Natural Flavor."[12]

<u>Nutrition Facts</u>                                          <u>Ingredient List</u>





**INGREDIENTS:** ALMONDMILK FILTERED WATER, ALMONDS , CANE SUGAR, **CONTAINS 2% OR LESS OF:** VITAMIN AND MINERAL BLEND (CALCIUM CARBONATE, VITAMIN E ACETATE, VITAMIN A PALMITATE, VITAMIN D2), SEA SALT, ==NATURAL FLAVOR==, SUNFLOWER LECITHIN, LOCUST BEAN GUM, GELLAN GUM.

17.    The front labels do not reference any flavors other than vanilla, which is deceptive and misleading in light of the ingredient list declaration of "Natural Flavor."

18.    "Natural flavor" refers to "the essential oil, oleoresin, essence or extractive…which contains the flavoring constituents" from a natural source such as plant material and can refer to combinations of natural flavors.[13]

---

[12] 21 C.F.R. § 169.177 (Vanilla flavoring.).
[13] 21 C.F.R. § 101.22(a)(3).

19.     Reasons for combining flavor into one package prior to their addition to the food include the volatile nature of flavoring constituents, ease of us and consistency.

20.     If the "natural flavor" only consisted of vanilla, this more valuable ingredient would be listed, i.e., vanilla flavor or flavoring, instead of the opaque and ubiquitous "natural flavor."

21.     The declaration of "natural flavor" in products represented as characterized by vanilla likely refers to a combination of flavors – some derived from real vanilla and some from non-vanilla natural sources, such as tree bark or lignin, referred to as "other natural flavors."[14]

22.     The ingredient most commonly used in the trade when requiring some vanilla flavor with non-vanilla flavors is "Vanilla With Other Natural Flavors" or "Vanilla WONF."[15][16]

23.     Because the Products contain flavor not derived from the characterizing food ingredient of vanilla, their unqualified, prominent and conspicuous representation as "Vanilla Almondmilk" is false, deceptive and misleading.

24.     If the amount of vanilla is insufficient to independently characterize the Products, a non-misleading description and name would be "Natural Vanilla Flavored Almondmilk" or "Vanilla Flavored Almondmilk."[17]

25.     If the amount of vanilla is sufficient to independently characterize the Products, a non-misleading description and name would be "Vanilla Almondmilk With Other Natural

---

[14] 21 C.F.R. § 101.22(i)(1)(iii) ("If the food contains both a characterizing flavor from the product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing flavor, the food shall be labeled in accordance with the introductory text and paragraph (i)(1)(i) of this section and the name of the food shall be immediately followed by the words "with other natural flavor" in letters not less than one-half the height of the letters used in the name of the characterizing flavor.")
[15] An ingredient designated "Vanilla WONF" or "[CHARACTERIZING FLAVOR] + WONF" should contain enough flavor from the food or flavor which precedes "WONF" to sufficiently independently characterize the food.  At this time and until discovery, the precise amount of vanilla contained in the Products' "Natural Flavor" is unknown.
[16] Some have argued that the vanilla standards of identity prohibit "extending" – adulterating or diluting – vanilla through the addition of "other natural flavors" because this would result in the spiking or fortification of the vanilla flavor with vanillin.
[17] 21 C.F.R. § 101.22(i)(1)(i) ("If the food is one that is commonly expected to contain a characterizing food ingredient, e.g., strawberries in "strawberry shortcake", and the food contains natural flavor derived from such ingredient and an amount of characterizing ingredient insufficient to independently characterize the food").

Flavor."[18]

## III. Conclusion

26.     The proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Products because it is more expensive and desired by consumers.

27.     Had Plaintiff and Class members known the truth about the Products, they would not have bought the Product or would have paid less for it.

28.     The Products contain other representations which are misleading and deceptive.

29.     As a result of the false and misleading labeling, the Products are sold at premium prices, approximately no less than $5.99, per 64 OZ quart (1.89L) (across the Product Lines), excluding tax – compared to other similar products represented in a non-misleading way.

### Jurisdiction and Venue

30.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

31.     Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

32.     This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

33.     Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

34.     A substantial part of events and omissions giving rise to the claims occurred in this District.

---

[18] 21 C.F.R. § 101.22(i)(1)(iii)

Parties

35.    Named Plaintiff is a citizen of Sullivan County, New York.

36.    Jane Doe plaintiffs are citizens of the 49 states for which the identity of a named plaintiff has not been disclosed, but who were affected in the same manner as the Named Plaintiffs.

37.    The allegations as related to laws of other states where no named plaintiff has been disclosed serves as a placeholder upon joinder or amendment.

38.    Defendant is a Delaware limited liability company with a principal place of business in Broomfield, Colorado (Broomfield County).

39.    The members of defendant are (1) WWF Operating Company, a Delaware corporation with a principal place of business in Broomfield, Colorado (Broomfield County) and (2) Danone North America Public Benefit Corporation, a Delaware public benefit corporation with a principal place of business in White Plains, New York (Westchester County).

40.    Defendant is considered a citizen of Delaware, Colorado and New York.

41.    Diversity jurisdiction exists because named plaintiff is a citizen of a different state from defendant.[19]

42.    During the class period, Named and Jane Doe Plaintiffs purchased one or more of the Products for personal use, consumption or application with the representations described herein, for no less than the price indicated, *supra*, excluding tax, within their districts and/or states.

43.    Named and Jane Doe Plaintiffs purchased the Products based upon the representations on the packaging.

44.    Named and Jane Doe Plaintiffs would consider purchasing the Products again if there were assurances that the Products' representations were no longer misleading.

---

[19] 28 U.S.C. § 1332(d)(2)(A).

<u>Class Allegations</u>

45.    The classes will consist of all consumers in all 50 states with sub-classes for the individual states.

46.    The present complaint contains Named Plaintiffs from: New York, who will represent his/her/their state sub-classes of persons who purchased any Products containing the actionable representations during the statutes of limitation.

47.    Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if Named and Jane Doe Plaintiffs and class members are entitled to damages.

48.    Named and Jane Doe Plaintiffs' claims and the basis for relief are typical to other members because all were subjected to the same representations.

49.    Named Plaintiffs are adequate representatives because their interests do not conflict with other members.

50.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

51.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

52.    Named and Jane Doe Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

53.    Named and Jane Doe Plaintiffs seek class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350, California Consumers<br>Legal Remedies Act, Civ. Code §§ 1750-1785 ("CLRA")<br>and Consumer Protection Statutes of Other States and Territories</u>

54. Named and Jane Doe Plaintiffs assert causes of action under the consumer protection statutes of the all 50 states, with Named Plaintiff asserting the consumer protection laws of his or her individual state.

a. Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et. seq.*;
b. Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et. seq.*;
c. Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521 *et. seq.*;
d. Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et. seq.*;
e. California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* and Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200- 17210 *et. seq.*;
f. Colorado Consumer Protection Act, Colo Rev. Stat § 6-1-101, *et. seq.*;
g. Connecticut Unfair Trade Practices Act, Conn. Gen Stat § 42-110a, *et. seq.*;
h. Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et. seq.*;
i. District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et. seq.*;
j. Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes*§ 501.201, *et. seq.*;
k. Georgia Fair Business Practices Act, §10-1-390 *et. seq.*;
l. Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes § 480 1, *et. seq.* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statute § 481A-1, *et. seq.*;
m. Idaho Consumer Protection Act, Idaho Code § 48-601, *et. seq.*;
n. Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et. seq.*;
o. Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-1 *et. seq.*;
p. Iowa Consumer Fraud and Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714.16 *et seq.*;
q. Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et. seq.*;
r. Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et. seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et. seq.*;
s. Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et. seq.*;
t. Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et. seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et. seq.*;
u. Maryland Consumer Protection Act, Md. Code, Com. Law § 13-101 *et seq.*;
v. Massachusetts Unfair and Deceptive Practices Act, Mass. Gen Laws Ch. 93A;
w. Michigan Consumer Protection Act, §§ 445.901, *et. seq.*;
x. Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et. seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et. seq.*;
y. Mississippi Consumer Protection Act, Miss. Code An. §§ 75-24-1, *et. seq.*;
z. Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*;
aa. Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et. seq.*;
bb. Nebraska Consumer Protection Act, neb. Rev. Stat. § 59 1601 *et. seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et. seq.*;
cc. Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et. seq.*;
dd. New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et. seq.*;

ee.  New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et. seq.*;

ff.  New Mexico Unfair Practices Act, N.M. Sta. Ann. §§ 57 12 1, *et. seq.*;

gg.  New York General Business Law ("GBL") §§ 349 & 350;

hh.  North Carolina General Statutes Chapter 75: Monopolies, Trusts and Consumer Protection, N.C. Gen. Stat. §§ 75-1.1 through 75-35;

ii.  North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et. seq.*;

jj.  Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109;

kk.  Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et. seq.*;

ll.  Oregon Unfair Trade Practices Act, Ore. Rev. Stat. § 646.608(e) & (g);

mm.  Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201-1 *et. seq.*;

nn.  Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1 *et. seq.*;

oo.  South Carolina Unfair Trade Practices Act, S.C. Code Law § 39-5-10, *et. seq.*;

pp.  South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et. seq.*;

qq.  Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et. seq.*;

rr.  Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. §§ 17.41 *et. seq.*;

ss.  Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-1 *et. seq.*;

tt.  Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, § 2451, *et. seq.*;

uu.  Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196 *et. seq.*;

vv.  Washington Consumer Fraud Act, Wash. Rev. Code § 19.86/0101, *et. seq.*;

ww.  West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et. seq.*;

xx.  Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et. seq.*; and

yy.  Wyoming Consumer Protection Act, Wyo. Stat. Ann.§§ 40-12-101 *et. seq.*;

55.    Named and Jane Doe Plaintiffs and class members assert causes of action under the consumer protection laws of their States.

56.    Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because (1) it gives the impression to consumers the Products contain more of the characterizing ingredients than they actually do and (2) the ingredient list fails to dispel ambiguity and reinforces the front-label impression as to a greater amount of the characterizing ingredients.

57.    Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

58.    Named and Jane Doe Plaintiffs and class members desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product

type.

59.     After mailing appropriate notice and demand, Named and/or Jane Doe Plaintiffs who reside in a State where notice is required prior to seeking damages under that State's Consumer Protection Statutes, will have mailed and/or have amended this complaint to request damages. Cal. Civil Code § 1782(a), (d); Mass. UDAP, Mass. Gen Laws Ch. 93A, etc.

60.     The representations and omissions were relied on by Named and Jane Doe Plaintiffs and class members, who paid more than they would have, causing damages.

<u>Negligent Misrepresentation</u>

61.     Named and Jane Doe Plaintiffs and class members incorporate by reference all preceding paragraphs.

62.     Defendant misrepresented the misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products through representing the characterizing ingredient was present in greater amount than it actually was.

63.     Defendant had a duty to disclose and/or provide non-deceptive labeling of the Products and knew or should have known same were false or misleading.

64.     This duty is based on defendant's position as an entity which has held itself out as having special knowledge in the production, service and/or sale of the product type, given that defendant is a dairy cooperative and deals exclusively in products based on milk.

65.     The representations took advantage of cognitive shortcuts made by consumers at the point-of-sale and their trust placed in defendant, a well-known and widely recognized and respected brand in this sector for this type of product.

66.     Named and Jane Doe Plaintiffs and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the

purchase of the Products.

67.    Named and Jane Doe Plaintiffs and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty Implied Warranty of Merchantability and<br>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

68.    Named and Jane Doe Plaintiffs incorporate by references all preceding paragraphs.

69.    Defendant manufactures and sells products which contain a characterizing ingredient or flavor which is desired by consumers.

70.    The Products warranted to Named and Jane Doe Plaintiffs and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

71.    Defendant's front labels informed Named and Jane Doe Plaintiffs the Products contained flavoring exclusively from vanilla, when this was not accurate.

72.    Defendant had a duty to disclose and/or provide a non-deceptive description of the Products' ingredients and knew or should have known same were false or misleading.

73.    This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector

74.    The Products warranted to Named and Jane Doe Plaintiffs and class members that the characterizing ingredients, emphasized by the Products' name, description, label and/or website and marketing, was (1) present in an amount sufficient to characterize the Products and (2) the exclusive source of flavor in the Products.

75.    Named and Jane Doe Plaintiffs provided or will provide notice to defendant and/or its agents, representatives or retailers.

76.    The Products did not conform to their affirmations of fact and promises, wholly due

to defendant's actions and were not merchantable.

77.    Named and Jane Doe Plaintiffs and class members relied on defendant's claims, paying more than they would have.

Fraud

78.    Named and Jane Doe Plaintiffs incorporate by references all preceding paragraphs.

79.    Defendant's purpose was to sell a product which contained a valuable and desired characterizing ingredient or flavor, and represent the Products were exclusively or predominantly flavored from that ingredient, and contained sufficient independent amounts of same such that they would accurately be described by the product name ascribed to them.

80.    The Products were not flavored exclusively from the characterizing ingredient.

81.    Defendant's fraudulent intent is evinced by its failure to accurately identify the Products on their front labels when it was in a position to disclose this but did not accurately describe the nature of the Products.

82.    Defendant's intent was to secure economic advantage in the marketplace against competitors by appealing to consumers who value products with this characterizing ingredient for the above-described reasons.

83.    Named and Jane Doe Plaintiffs and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

Unjust Enrichment

84.    Named and Jane Doe Plaintiffs incorporate by references all preceding paragraphs.

85.    Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

15

<u>Jury Demand and Prayer for Relief</u>

Named and Jane Doe Plaintiffs demand a jury trial on all issues.

**WHEREFORE,** Named and Jane Doe Plaintiffs pray for judgment:

1. Declaring this a proper class action, certifying named plaintiffs as representatives and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove and/or refrain from the challenged representations, restitution and disgorgement for members of the State Subclasses pursuant to the consumer protection laws of their States;

4. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and consumer protection law claims, and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   September 11, 2019

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

*-and-*

Reese LLP
Michael R. Reese

100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
mreese@reesellp.com

7:19-cv-08442
United States District Court
Southern District of New York

Shari Trust, Jane Doe individually and on behalf of all others similarly situated

Plaintiff

- against -

Silk Operating Company, LLC

Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
 505 Northern Blvd., #311
   Great Neck, NY 11021
   Tel: (516) 303-0552
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  September 11, 2019

/s/ Spencer Sheehan
Spencer Sheehan